UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL A. DORSEY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-1896** |
| **RONNIE SEAL, CHARLES GRAHAM, CHARLIE MORRIS, SAMUEL TYNES, RORY BEALL, VANESSA TYSON, ALLEN BOURGEOIS, ELIZABETH OLIVEIRA, LARRY WAGONER, BRUCE STEWARD, WAYNE SEAL, KATHYLEEN MCGINNIS, ROBERT TANNER, JAMES MILLER JR., LINDA RAMSAY, AND RICHARD STALDER** | **SECTION "C" (4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b) and (c), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e (c)(1) and(2)**. On June 27, 2005 the undersigned conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating by conference telephone call.[2] Upon review of the record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 5. The plaintiff was sworn prior to testifying. The cassette tape of the hearing is being placed in the custody of the Court Recording Unit along with a copy of this Report and Recommendation.

I.    **Factual Summary**

   A.    **The Complaint**

The plaintiff, Michael A. Dorsey ("Dorsey"), is incarcerated in the Dixon Correctional Institute ("DCI"). Dorsey filed this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983, seeking monetary damages as a result of alleged violations of his constitutional rights while housed in the Washington Correctional Institute ("WCI"), now known as B.B. "Sixty" Rayburn Correctional Center ("RCC"). He has named as defendants, Lieutenant Ronnie Seal, Sergeant Charles Graham, Sergeant Charlie Morris, Sergeant Samuel Tynes, Lieutenant Rory Beall, Social Worker Vanessa Tyson, Social Worker Allen Bourgeois, Social Worker Elizabeth Oliveira, Social Worker Larry Wagoner, Sergeant Bruce Steward, EMT, Lieutenant Wayne Seal, Assistant Warden Kathyleen McGinnis, and Deputy Warden Robert Tanner, each in their individual capacity. He also has named as defendants Warden James Miller, Jr., Deputy Secretary of the Louisiana Department of Corrections ("DOC") Linda Ramsay, and DOC Secretary Richard Stalder, each in their individual and official capacity.

Dorsey alleges that on November 20, 2003, he filed a federal civil rights suit in this Court, Civ. Action No. 03-3227"K"(5), against Lieutenant Ronnie Seal for retaliation, *inter alia*.[3] Other than this statement, he provides no facts or allegations related to any of the named defendants in connection with the present suit.

   B.    **The *Spears* Hearing**

Dorsey testified that he was not able to file a complete complaint in this case because he did not have access to paper while in extended lock-down. He further testified that his present

---

[3]The suit was dismissed for failure to prosecute on April 12, 2006. *Dorsey v. Seal*, C.A. 03-3772"K"(5), Rec. Doc. Nos. 63, 64.

2

complaint arises out the actions of Lieutenant Ronnie Seal taken in retaliation for his filing of *Dorsey v. Seal*, Civil Action No. 03-3227"K"(5), on November 20, 2003. Specifically, he claims that Seal falsely reported that Dorsey intended to hang himself which resulted in Dorsey being placed on suicide watch.

Dorsey stated that, on November 10, 2003, Seal and other officers improperly searched his cell out of retaliation for his numerous complaints about them. Dorsey claimed that he had filed several requests for protection from the officers because Lieutenant Seal was taking his mail. Nine days later, Ronnie Seal took away Dorsey's outdoor privileges. Dorsey stated that he told Seal that he only took away his privilege because of the pending lawsuit in Civil Action No. 03-3227"K"(5). At that time, Seal called the nurse to falsely report that Dorsey intended to hang himself.

As a result, Dorsey was placed on suicide watch and locked in his cell. While on suicide watch, Dorsey stated that they took his belongings and he lost access to paper. He also claims that, as a result, he was unable to file pleadings in his federal cases or complaints about the officers. He also testified that Seal told him that he reported the suicide so that when the officers killed Dorsey, they would get away with it.

Dorsey testified that he wrote a letter to Assistant Warden McGinnis. He claims that he explained to her the relationship between him and Ronnie Seal. Dorsey stated that Lieutenant Wayne Seal investigated the claims. In his response, Wayne Seal indicated that he spoke to the Social Worker, Vanessa Tyson, and she indicated that Dorsey denied that he wanted to commit suicide. He claims that he sued Wayne Seal because he covered up the actions of his nephew, Ronnie Seal, for his actions.

Dorsey also testified that, when he was taken off of suicide watch 72 hours later, the officers, Ronnie Seal, Graham, and Morris, entered his cell for another shake down search. He stated that they tore up his cell. He claims that they confiscated 11 or 12 books, including law books, novels and religious material. He further complained that Tynes watched the incident on the monitor and did nothing to stop them. He stated that he asked both Tyson and Morris to call for ranking officers but neither one did so.

Dorsey said that he wrote another letter complaining about the officers and the search. He received a response stating that the search was appropriate because he had too much paper in his cell.

Dorsey further alleged that every time Ronnie Seal was on duty, he was harassed and physically harmed until he was finally transferred to DCI on February 28, 2005. Dorsey claimed that Seal got more violent each time the other administrators and social workers, including Oliveira and Bourgeois, backed him up or condoned what he had done. Dorsey conceded, however, that he was not physically harmed by Seal during the events which form the basis of this complaint.

Dorsey stated that over the time he was in WCI, he received six or seven disciplinary write-ups, endured shake-downs of his cell, and suffered a busted ear drum. He stated that he became so upset, that he wrote to Wayne Seal and cursed him and the mental health program for allowing the false information into his record. He further alleged that his reputation followed him to DCI where he remained housed on extended lock-down for no reason.

Dorsey stated that he named the social workers as defendants because they did nothing to help him when he wrote to them about Seal. He also claims that Steward, Wayne Seal, and

McGinnis did not do anything about his complaints regarding the false suicide report. He complained that McGinnis did not discipline the officers for the shake-down of his cell.

He also complained that, on the day of the suicide report, Steward and Ronnie Seal reported that he declared himself to be a medical emergency just so his account would be charged for the medical care.

Dorsey also named Tanner and Miller because he wrote to them about the suicide charge and they did not do anything to Seal. He also included Ramsay as a defendant because she accepted the investigation done at WCI and found that there was no reason to doubt the officers. He named Secretary Stalder for his alleged failure to properly train the officers at WCI because the officers continually acted in violation of the prison rules.

### III.     Standards of Review for Frivolousness

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e (c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts

alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## IV.  Dorsey's Claim is Untimely

Dorsey's specifically testified at the *Spears* Hearing that the claims raised in this complaint arise out the above-described incidents which occurred between November 20, 2003 and November 28, 2003. As part of its frivolous review, the Court will consider whether Dorsey's complaint was timely filed.

Because there is no federal statute of limitations for § 1983 claims, the district court looks to the forum state's statute of limitations for personal injury claims. *Board of Regents of University of New York v. Tomanio*, 446 U.S. 478, 483 (1980) (citing 42 U.S.C. § 1988); *Wilson v. Garcia*, 471 U.S. 261, 275 (1985) (§ 1983 actions are best characterized as personal injury actions); *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998) (citing *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994)). In Louisiana, personal injury claims are governed by La. Civ. Code Art. 3492, which provides for a prescriptive period of one year from the date of injury or damage.[4] *See Jacobsen*, 133 F.3d at 319 (citing *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989)).

---

[4] Article 3492 provides that: "[d]elictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage."

6

For purposes of calculating the limitations period, a § 1983 cause of action accrues when the plaintiff knows or has reason to know of the injury which forms the basis of his action. *Id*., at 319; *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). In this case, Dorsey's cause of action arising out of the false report of suicidal tendencies and the search of his cell were known to him on or before November 28, 2003. Applying the prescriptive period, Dorsey had one year from that date, or until November 28, 2004, to timely file his § 1983 petition.

The record in this case reflects that Dorsey's complaint was filed by the Clerk of Court on June 1, 2005, when pauper status was granted. In the *pro se* prisoner context, however, the date when prison officials receive the complaint for delivery to the court is considered the time of filing for limitations purposes. *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995); *see also Thompson v. Raspberry*, 993 F.2d 513, 515 (5th Cir. 1993) (pro se prisoner's objection to a report and recommendation deemed filed when given to prison officials for mailing). In this case, Dorsey submitted his handwritten complaint with a cover letter dated April 7, 2005. This is the earliest date on which he could have delivered the cover letter and complaint to prison officials for mailing.

As noted above, Dorsey's claims brought in this § 1983 action accrued by November 28, 2003. Dorsey had one-year from that date, or until November 28, 2003, to file his suit in accordance with La. Civ. Code art. 3492 as applicable to § 1983 *et seq*. He did not do so.

Therefore, Dorsey's petition deemed filed on April 7, 2005, was not filed within the one-year period required by law. His complaint should be dismissed as frivolous for that reason.

### V.     **Dorsey's Complaint Can be Dismissed as Malicious**

Even if Dorsey had timely filed his complaint, the claims raised herein are identical to claims raised in another suit, *Dorsey v. Graham*, Civil Action 05-2670"R"(4), which was filed on June 30,

2005. In that complaint, Dorsey names as defendants, Graham, Ronnie Seal, Morris, Tynes, Steward, Wayne Seal, Miller, Ramsay, and Stalder.[5] He complained therein that, in retaliation for previously filed civil rights suit, Ronnie Seal denied him outdoor exercise on November 20, 2003, falsely reported on November 24, 2003, that Dorsey intended to kill himself, and conducted an illegal search of his cell on November 28, 2003, along with Graham, Morris and Tynes. Dorsey claimed that he asked Morris and Tynes to call for ranking officers during the search and they refused. He further alleged that items were inappropriately taken from his cell and his cell was left in total disarray. Dorsey also claimed that he was seen by EMT Steward after the search of his cell and he was improperly charged for an emergency medical visit. Dorsey went on to complain that Wayne Seal failed to properly investigate his complaints against Ronnie Seal.[6]

On February 22, 2006, the undersigned Magistrate Judge issued a Report and Recommendation in Civil Action 05-2670"R"(4), recommending that Dorsey's these claims against Ronnie Seal, Graham, Morris, Tynes, Steward, Wayne Seal, Miller, Ramsay, and Stalder be dismissed with prejudice as frivolous and/or for failure to state a claim for which relief can be granted.[7] The District Judge adopted the Report and Recommendation and dismissed Dorsey's claims on March 30, 2006.[8] Dorsey's subsequent appeal was dismissed by the United States Fifth Circuit Court of Appeals for want of prosecution on July 18, 2006.[9]

---

[5]Civ. Action No. 05-2670"R"(4), Rec. Doc. No. 1.

[6]In addition to these claims, Dorsey also alleged that Ronnie Seal attacked him on December 4, 2003, and detailed his complaints with regard to allegedly inadequate administrative grievance replies related to that incident.

[7]Civ. Action No. 05-2670"R"(4), Rec. Doc. No. 19. The Court recommended that the excessive force claim of December 4, 2003, be dismissed without prejudice for failure to exhaust administrative remedies.

[8]*Id.*, Rec. Doc. Nos. 22, 23.

[9]*Id.*, Rec. Doc. No. 26.

8

Repetitious litigation raising the same cause of action as a previous or pending suit is subject to dismissal under Title 28 U.S.C. § 1915 as malicious. *Pittman v. Moore*, 980 F. 2d 994, 995 (5th Cir. 1993) (claims which duplicate claims pending in another federal action by the same plaintiff are "malicious"); *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988); *see also Wilson v. Lynaugh*, 878 F.2d 846, 849-50 (5th Cir. 1989). Because the claims in this action are duplicitous of those raised and resolved in Dorsey's other civil action, this complaint is subject to dismissal as malicious under Title 28 U.S.C. § 1915.

**VI.   Recommendation**

It is therefore **RECOMMENDED** that Dorsey's § 1983 complaint against the defendants, Lieutenant Ronnie Seal, Sergeant Charles Graham, Sergeant Charlie Morris, Sergeant Samuel Tynes, Lieutenant Rory Beall, Social Worker Vanessa Tyson, Social Worker Allen Bourgeois, Social Worker Elizabeth Oliveira, Social Worker Larry Wagoner, Sergeant Bruce Steward, EMT, Lieutenant Wayne Seal, Assistant Warden Kathyleen McGinnis, Deputy Warden Robert Tanner, Warden James Miller, Jr., Deputy Secretary Linda Ramsay, and Secretary Richard Stalder, be **DISMISSED WITH PREJUDICE** as frivolous, for failure to state a claim for which relief can be granted, and/or as malicious pursuant to Title 28 U.S.C. § 1915(e) and § 1915A and Title 42 U.S.C. § 1997e because the claims therein are prescribed and are duplicitous of claims previously resolved in another federal civil rights litigation.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this \_\_\_21st\_\_\_ day of _____August_____, 2007.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**